1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SOKHA SUONG,

               Petitioner,

    v.

PAMELA BONDI, et al.,

               Respondents.

CASE NO. 2:25-cv-02309-LK

ORDER GRANTING IN PART
AND DENYING IN PART
PETITION FOR WRIT OF HABEAS
CORPUS

       This matter comes before the Court on Petitioner Sokha Suong's Petition for Writ of Habeas Corpus. Dkt. No. 1. Suong requests an order 1) requiring Respondents "to immediately release [him] from custody," 2) preventing Respondents from re-detaining him "without first holding a hearing before a neutral decisionmaker at which the government bears the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances since Petitioner was previously released," and 3) barring Respondents from removing him to a third country. *Id.* at 24.

The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized by statute"). For the reasons stated below, the Court grants in part and denies in part Suong's petition.

## I.    BACKGROUND

Suong avers that he "was born to Cambodian refugees in a refugee camp in Thailand," and "was brought to the United States as a baby" and later "received a green card[.]" Dkt. No. 1 at 6; *see also* Dkt. No. 16 at 1; Dkt. No. 14 at 3 (Suong "is a native and citizen of Cambodia, who was born in Thailand"). He was lawfully admitted to the United States as a refugee in 1981 and adjusted to refugee status on May 14, 1987. Dkt. No. 14 at 3; *see also* Dkt. No. 16 at 1. He claims to have "no paperwork from either Cambodia or Thailand." Dkt. No. 1 at 6.

On May 10, 2016, Suong "was taken into ICE custody" and "issued a Notice to Appear . . . charging removability for an aggravated felony under INA § 237(a)(2)(A)(iii) and a violation of a protective order under INA § 237(a)(2)(E)(ii)." Dkt. No. 16 at 3–4. On July 8, 2021, an Immigration Judge ordered Suong "removed from the United States to Thailand and, in the alternative, Cambodia." *Id.* at 4; *see also* Dkt. No. 15-4. The parties agree that the July 8, 2021 removal order is administratively final. Dkt. No. 16 at 4; *see also* Dkt. No. 1 at 4; Dkt. No. 14 at 4). On November 19, 2021, Suong was "released on an Order of Supervision ('OSUP') due to the inability to obtain travel documents to Thailand or Cambodia at that time." Dkt. No. 16 at 4; *see also* Dkt. No. 15-6.

On September 9, 2025, Suong was taken into ICE custody at an OSUP check-in appointment, and his OSUP was revoked. *See* Dkt. No. 1 at 5; Dkt. No. 14 at 5; Dkt. No. 16 at 4. Department of Homeland Security records from that day state the following:

> Per ERO headquarters guidance, there is now a significant likelihood of removal to Cambodia in the reasonably foreseeable future. As such, ERO Seattle conducted a custody redetermination to bring SUONG back into custody for travel document acquisition and removal to Cambodia . . . On September 9, 2025, the Seattle Field Office Director (FOD) issued SUONG a Notice of Revocation of Release letter. On September 9, 2025, ERO Seattle served SUONG the Notice of Revocation of Release letter . . . and conducted an informal interview as recorded on the Alien Informal Interview Upon Revocation of Order of Supervision Under 8 C.F.R. 241.4(1); 8 C.F.R. 241.13(i).

Dkt. No. 15-7 at 5–7. Suong has been detained at the Northwest ICE Processing Center ("NWIPC") since September 9th. Dkt. No. 1 at 2–3; *see also* Dkt. No. 15-7 at 4.

## II.    DISCUSSION

Suong asserts five grounds for relief: 1) Fifth Amendment violation for indefinite detention; 2) procedural due process violation for detention without a hearing; 3) violation of ICE regulations for failing to provide notice and an opportunity to be heard prior to re-detention; 4) violations of the Fifth Amendment, the Convention Against Torture and its Implementing Regulations, and the Administrative Procedure Act for potential third country removal; and 5) violations of the Fifth and Eighth Amendments for potential third country removal. Dkt. No. 1 at 20–22.

### A.    Legal Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *see also Ben-Sholom v. Ayers*, 674 F.3d 1095, 1099 (9th Cir. 2012).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001) (citing *Campos-Sanchez v. I.N.S.*, 164 F.3d 448, 450 (9th Cir. 1999), *superseded by statute on other grounds as recognized in Arizmendi-Medina v. Garland*, 69 F.4th 1043, 1052 (9th Cir. 2023)). Accordingly, the Supreme Court has held that "the Due Process Clause protects a[] [noncitizen] subject to a final order of deportation[.]" *Zadvydas v. Davis*, 533 U.S. 678, 693–94 (2001) (citing *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)); *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

The federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). A plaintiff seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

**B.      The Court Grants Suong's Request for Release**

When a final order of removal has been entered, a noncitizen enters a 90-day "removal period." 8 U.S.C. § 1231(a)(1). To ensure a noncitizen's presence for removal and to protect the community from noncitizens who may present a danger, Congress mandated detention during the removal period. 8 U.S.C. § 1231(a)(2). Section 1231(a)(6) authorizes ICE to continue detention of noncitizens after the expiration of the removal period. 8 U.S.C. § 1231(a)(6). Although there is no statutory time limit on detention pursuant to Section 1231(a)(6), the Supreme Court has held that a noncitizen may be detained only "for a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Zadvydas*, 533 U.S. at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701. "After this 6-month period, once the [non-citizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* Section 1231(a)(6) thus "requir[es] release from long-term detention" when there is no significant likelihood of removal in the reasonably foreseeable future. *Jennings v. Rodriguez*, 583 U.S. 281, 311 (2018) (citation modified). Suong has been detained beyond the presumptively reasonable six-month custody period: he has been detained for a total of approximately eight months since his removal order became final. *See* Dkt. No. 1 at 3 (calculating detention time as "over four months . . . after . . . final order of removal" between May and November 2021; re-detention beginning on September 9, 2025); Dkt. No. 14 at 6 (as of December 3, 2025, Suong's "total detention after his removal

became administratively final . . . is 219 days").[1] As discussed above, Suong "has no paperwork from either Cambodia or Thailand," Dkt. No. 1 at 6, and the reason that he was previously released on an OSUP was because the Government was unable to obtain travel documents to Thailand or Cambodia, Dkt. No. 16 at 4. Suong avers that he "cannot presently be returned to Thailand, because he has no connection to Thailand other than being born in a refugee camp there," and he likewise "has no connection to [Cambodia]"; "[h]e has never been there" and has "no known relatives or friends" there. Dkt. No. 1 at 7.

Respondents[2] have not sufficiently rebutted Suong's assertion that there is no significant likelihood of his removal. After waiting nearly a month and a half from the date Suong was re-detained, on October 20, 2025, ICE requested travel documents for Suong from Cambodia and requested a 30-day response time. Dkt. No. 16 at 4. On November 25, 2025, after Cambodia did not respond to the request, ICE followed up with Cambodia regarding the requested documents. *Id.* Respondents represent that although "[t]here is no definitive timeframe for [the travel documents] for Cambodian citizens," "there has been increased cooperation between the United

---

[1] The parties do not fully brief whether the Court should consider Petitioner's detention cumulatively. *See* Dkt. No. 1 at 8; Dkt. No. 14 at 6; Dkt. No. 17 at 2 n.1. However, the Court is not aware of any authority within this Circuit where the court did not calculate detention cumulatively based on all post-removal order detentions in determining whether *Zadvydas*'s presumption of reasonableness is exceeded. "Rather, courts in this [Circuit] appear to uniformly aggregate detention periods, even over the span of decades[.]" *Phan v. Warden of Otay Mesa Det. Facility*, No. 25-CV-02369-AJB-BLM, 2025 WL 3141205, at *3 (S.D. Cal. Nov. 10, 2025) (citing *Tran v. Scott*, No. 2:25-CV-01886-TMC-BAT, 2025 WL 2898638, at *4 (W.D. Wash. Oct. 12, 2025); *Nguyen v. Scott*, No. 2:25-CV-01398, 2025 WL 2419288, at *13 (W.D. Wash. Aug. 21, 2025); *Tang v. Bondi*, No. 2:25-CV-01473-RAJ-TLF, 2025 WL 2637750, at *4 (W.D. Wash. Sept. 11, 2025); *Huang v. Albarran, et al.*, No. 1:25-CV-01308 JLT EPG, 2025 WL 2986885, at *4 (E.D. Cal. Oct. 23, 2025); *Sied v. Nielsen*, No. 17-CV-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018); *S.F. v. Bostock*, No. 3:25-CV-01084-MTK, 2025 WL 2841022, at *4 (D. Or. Oct. 7, 2025)).

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary." (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

States and Cambodia in recent years" and "[t]he embassy is actively scheduling interviews once [the travel documents] reach[] the government of Cambodia." *Id.* Indeed, "[t]here have been 55 removals to Cambodia in fiscal year ('FY') 2025 as of September 2, 2025," compared to "20 removals in FY 2024" and "6 removals in FY 2023." *Id.*

As Suong astutely points out, though, the Government does not "identify how many requests for travel documents the United States made to Cambodia that resulted in those 55 removals." Dkt. No. 17 at 4; *see also Nguyen v. Hyde*, 788 F. Supp. 3d 144, 151 (D. Mass. 2025) (court could not determine there was a significant likelihood of removal to Vietnam in the reasonably foreseeable future without information such as total number of requests versus actual number of travel documents issued by Vietnam). Nor does the Government indicate when the requests resulting in the 55 removals were made. *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 726 (W.D. Wash. 2025) ("[Respondent] does not clarify whether travel documents *issued* in FY2025 were also *requested* in FY2025, or if they include requests made in previous fiscal years."). "General indications that U.S. agencies have been in discussions with [the target country] regarding repatriation efforts do not indicate that those discussions will result in the timely removal of Petitioner, as it is unclear whether those efforts will be successful." *Zhao v. Kelly*, No. CV 17-777-BRO (KES), 2017 WL 1591818, at *4 (C.D. Cal. Apr. 27, 2017); *see also Gilali v. Warden of McHenry Cnty. Jail*, No. 19-CV-837, 2019 WL 5191251, at *5 (E.D. Wis. Oct. 15, 2019) (holding that although the "respondent asserts that [the petitioner's] travel document requests . . . remain pending and ERO continues to follow up on the documents' status, [ ] this is insufficient. It is merely an assertion of good-faith efforts to secure removal; it does not make removal likely in the reasonably foreseeable future."); *Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006) ("ICE merely asserts that it has followed up on its request for travel documents from

India and done all it can. . . . This is not sufficient evidence to rebut petitioner's showing that he is unlikely to be removed in the reasonably foreseeable future."). Furthermore, Respondents do not address Suong's arguments as to why his removal in particular is not reasonably foreseeable: he has no documentation from either Thailand or Cambodia, no known family in Cambodia, and the Government was unable to remove him during his prior detention period of over four months due to inability to obtain travel documents from either Cambodia or Thailand. "ICE is not permitted to hold [Suong] indefinitely while it waits for travel documents from [Cambodia]." *Tran v. Bondi*, C25-01897-JLR, 2025 WL 3140462, at *3 (W.D. Wash. Nov. 10, 2025).

## C.    The Court Denies Suong's Request for Injunctive Relief

Because the Court has determined that Suong is entitled to release from custody based on his first ground for relief, it need not address his other claims in the context of his request for release. However, Suong also seeks an order prohibiting his future detention without a hearing before a neutral decisionmaker. Dkt. No. 1 at 24. The Court must therefore determine whether injunctive relief is appropriate. Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [Petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Roman*, 977 F.3d at 941–42. Importantly, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953)).

To be clear, Suong has shown that he suffered irreparable injuries for which monetary damages are likely unavailable or inadequate to compensate him: his unlawful detention and separation from his family. *Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017) ("[S]eparated families . . . are substantial injuries and even irreparable harms."); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976))). But he has not argued that these injuries are likely to recur, and pursuant to the party presentation doctrine, the Court will not invent arguments for him. *See Clark v. Sweeney*, No. 25-52, 2025 WL 3260170, at *1 (U.S. Nov. 24, 2025) ("To put it plainly, courts call balls and strikes; they don't get a turn at bat." (citation modified)); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). For this reason, his request for injunctive relief is denied.

## D.     The Court Denies Suong's Requests Related to Third Country Removal

Suong requests an order prohibiting Respondents from "remov[ing] Petitioner to any third country because Respondents' third-country removal program seeks to impose unconstitutional punishment on its subjects, including imprisonment and other forms of harm," or alternatively, prohibiting them from "remov[ing] or seek[ing] to remove Petitioner to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings." Dkt. No. 1 at 24.[3] He argues that such an order is necessary because "Respondents have developed and implemented a policy and practice of removing

---

[3] Suong does not seek this relief in the alternative, but if the Court granted the former prohibition, the latter would serve no purpose.

1  individuals to third countries, without first following the procedures in the INA for designation

2  and removal to a third country and without providing fair notice and an opportunity to contest the

3  removal in immigration court." *Id.* at 16. Suong is concerned that Respondents will unlawfully

4  remove him to a third country in violation of the Fifth and Eighth Amendments, 8 U.S.C. § 1231,

5  the Convention Against Torture and its Implementing Regulations, and the Administrative

6  Procedure Act. *Id.* at 13–19; 21–24.

7       Respondents contend that Suong's arguments about third country removal are "speculative,

8  and not ripe for review." Dkt. No. 14 at 10. Respondents aver that "there is no concrete indication

9  that such removal to a third country will occur" and "[t]he record contains no evidence supporting

10 the claim." *Id.* To the contrary, "ICE is currently seeking travel documents only to Cambodia." *Id.*

11 at 10; *see also* Dkt. No. 16 at 5 (Officer Diaz's declaration stating—under penalty of perjury—

12 that "ICE is seeking removal only to Cambodia at this time," although "ICE may again seek

13 removal to Thailand if a [travel document request] for Cambodia cannot be obtained."). Suong

14 replies that "Respondents do not deny [that] . . . the government has undertaken rapid and punitive

15 third-country removals without even the process required by its own regulations," showing that

16 "an action against him is sufficiently likely to make the matter ripe[.]" Dkt. No. 17 at 12.

17       Federal courts lack jurisdiction to hear claims that fail to "present an actual case or

18 controversy." *Ariz. Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir.

19 2003) (citation modified). To that end, federal courts may not "issue advisory opinions" or "declare

20 rights in hypothetical cases[.]" *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138

21 (9th Cir. 2000) (en banc).

22       At this juncture, Suong's claims about third country removal are too speculative to form a

23 live controversy. Suong's allegations regarding the Government's efforts to remove individuals to

24

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 10

third countries fail to establish a genuine threat of enforcement against him that is sufficiently ripe for adjudication. Officer Diaz's assurances that the Government is only seeking travel documents for Cambodia (and possibly Thailand in the future)—signed under the penalty of perjury—and the lack of evidence put forth by Suong suggesting this statement is untrue as to his specific case, precludes the Court from finding a genuine threat of foreseeable enforcement. Dkt. No. 16 at 5. Therefore, the Court lacks jurisdiction to adjudicate Suong's third country removal claims at this time. *See e.g.*, *Huynh v. Bondi*, No. C25-2093-KKE, 2025 WL 3534210, at *5 (W.D. Wash. Dec. 10, 2025) ("Respondents have attested that they have no intent to remove [Petitioner] to any country other than Vietnam, and have begun the process of securing travel documents for his removal to Vietnam . . . At this juncture, [Petitioner's] claims are too speculative to form a live controversy as to the third country removal issue."); *Tran*, 2025 WL 3140462, at *4 ("[Petitioner's] claims based on the possibility of third-country removal are speculative and invite the court to decide claims that are not part of a live controversy.").

### III.    CONCLUSION

For the reasons stated above, the petition writ of habeas corpus, Dkt. No. 1, is GRANTED IN PART and DENIED IN PART.

1.    Respondents shall immediately release Suong from custody subject to the conditions of his most recent order of supervision, Dkt. No. 15-6, or conditions otherwise compliant with 8 U.S.C. § 1231(a)(3). *See* 8 U.S.C. § 1231(a)(6) ("[I]f released, [an alien ordered removed] shall be subject to the terms of supervision in paragraph (3))."

2.    The Parties shall file a Joint Status Report by December 24, 2025, confirming that Petitioner has been released.

3.     Any fee petition should be filed within the deadlines set by the Equal Access to

Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir.

2025) (the Equal Access to Justice Act authorizes the award of attorney's fees to

petitioners who prevail against the Government in immigration habeas actions).

Dated this 23rd day of December, 2025.

Lauren King
United States District Judge